UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BARRY SCOTT COFFEY, et al.; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | 3:25-CV-353-KAC-JEM |
| CITY OF KNOXVILLE, TENNESSEE; | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER DISMISSING ACTION**

Before the Court is the "Motion to Dismiss Plaintiffs' First Amended Complaint" filed by Defendant City of Knoxville, Tennessee [Doc. 14]. For the reasons below, the Court grants the Motion in part, dismisses the federal claims in the First Amended Complaint, and declines to exercise supplemental jurisdiction over the remaining state claims.

## I. Background[1]

"Defendant City of Knoxville, Tennessee, is a municipality organized under the laws of the State of Tennessee" [Doc. 13 ¶ 20]. Plaintiffs (15) "municipal police officers" employed by Defendant at the relevant time [*See id.* ¶¶ 1, 5-19]. Defendant's "charter requires all positions of employment to be listed and classified in a written compensation plan periodically reviewed and approved by the Knoxville City Council" [*Id.* ¶ 21].

In 2021, Defendant "contracted with Management Advisory Group International, Inc. ('MAG') to prepare a compensation study and plan" that would ultimately impact

[1] Because Plaintiffs are the non-moving Parties, the Court construes the facts in the First Amended Complaint in the light most favorable to them, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in their favor. *See, e.g.*, *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 683 (6th Cir. 2024) (citation omitted).

Plaintiffs [*See id.* ¶ 23]. "After studying Knoxville's prior compensation plans and data from other municipalities, MAG proposed a 'Step Pay Plan' for Knoxville's police and firefighters" [*Id.* ¶ 28]. "Following meetings and public hearings," the Knoxville City "council enacted the Step Pay Plan into law on May 17, 2022" [*Id.* ¶ 29]. The relevant portion of the Step Pay Plan is codified at Knoxville, Tennessee, Code § 2-459.

"At the time of its enactment, the Step Pay Plan was understood by all involved, including MAG's representatives, the advisory committee, the mayor's office, and members of the Knoxville City Council, that there would be 25 steps within each job classification corresponding to years of service" [*Id.* ¶30 (citations omitted)]. The Step Pay Plan had "classifications" or Pay Grades for police officers "correspond[ing] to the ranks traditionally used within the police department" [*Id.* ¶ 37]. According to a February 2022 "Press Release" incorporated by reference into the First Amended Complaint, [*see* Doc. 13 ¶ 30], the Mayor "announced" "Implementation of a Step Pay Plan for Knoxville Police and Knoxville Fire Departments, allowing uniformed employees to advance each year throughout their careers," [*see* Doc. 1-2]

The operative First Amended Complaint alleges that Defendant has "failed to follow the Step Pay Plan as enacted" [*See id.* ¶ 36]. That is, the City allegedly failed to implement the Step Pay Plan in a way such that each officer's initial classification corresponded to that officer's years of service in his or her Pay Grade or rank [*See id.* ¶¶36, 37, 40-59]. "[A]t implementation in July 2022, and each year since, Defendant has placed Plaintiffs and other Police Sergeants and Police Lieutenants at arbitrary lower steps," [*see id.* ¶ 38], that do not "correspond[] to years of service" in his or her Pay Grade or rank, [*see id.* ¶ 30].

Plaintiffs sued Defendant [*See* Doc. 1]. The First Amended Complaint raises six (6) claims, the first four (4) are federal and cognizable under 42 U.S.C. § 1983 [*See* Doc. 13 at 14-16]. Counts

One and Two raise Fourteenth Amendment "Due Process" claims. Both rest on an alleged "property interest" in "having their [Plaintiffs'] jobs properly classified under the Step Pay Plan enacted by the Knoxville City Council, Knoxville, Tenn., Code § 2-458" [*Id.* ¶¶ 82, 88]. Counts Three and Four raise Fourteenth Amendment "Equal Protection" claims [*Id.* at 15-16].

Defendant filed a "Motion to Dismiss Plaintiffs' First Amended Complaint," arguing that (1) Plaintiffs' claims are barred by the applicable statute of limitations and (2) the First Amended Complaint fails to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6) [*See* Doc. 14 at 1-2]. Plaintiffs responded [Doc. 27]. Defendant replied [Doc. 30].

## II. Analysis

Here, to survive a motion to dismiss under Rule 12(b)(6), the operative complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court views the First Amended Complaint in the light most favorable to Plaintiffs, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in their favor. *See Caraway*, 98 F.4th at 683. But the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice" to state a plausible claim. *See Willman v. U.S. Att'y Gen.*, 972 F.3d 819, 823 (6th Cir. 2020) (quotations and citation omitted).

Starting with the Fourteenth Amendment "Due Process" claims (Counts One and Two), to state a viable claim, Plaintiffs have "the burden of establishing" that each officer has "a protected liberty or property interest." *See Lathfield Invs., LLC v. City of Lathrup Vill.*, 136 F.4th 282, 301 (6th Cir. 2025). In both Counts One and Two, Plaintiffs allege that they have "a property interest" in "having their jobs properly classified under the Step Pay Plan enacted by the Knoxville City

Council, Knoxville, Tenn., Code § 2-458" [Doc. 13 ¶¶ 82, 88]. So, under their theory, it is the Step Pay Plan, as codified, that establishes the relevant property interest [*See id.*]. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 566 F. App'x 462, 467 (6th Cir. 2014) (limiting analysis to what the "Complaint plainly states" is "the property interest").

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—that secure certain benefits and that support claims of entitlement to those benefits." *Lathfield Invs.*, 136 F.4th at 301 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "[A] property interest can be created," for example, "by a state statute, a formal contract, or a contract implied from the circumstances." *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017) (quotation omitted). But there must be a "mutually explicit understanding that supports the plaintiff's claim of entitlement." *Id.* (cleaned up).

Here, the First Amended Complaint fails to allege facts or identify a law showing that Plaintiffs have a property interest in implementation of the Step Pay Plan in the way they desire. Plaintiffs point to the codification of the Step Pay Plan in "Knoxville, Tenn., Code § 2-458" to establish a property interest in their preferred method of implementation [*See* Doc. 1 ¶¶ 82, 88; *see also* Doc. 27 at 14 ("[b]ecause the Pay Step Plan was legislatively enacted, Plaintiffs have a property interest in being properly classified under it")]. But that Code Section[2] only codifies the "classification" of officers and "pay steps." It does not codify how officers were initially to be classified or their initial pay steps determined. And the Code does not provide that an officer's pay step within each Pay Grade, or rank, would initially correspond to that officer's number of

[2] Section 2-458 governs classification of "fire department uniformed employees." *See* Knoxville, Tenn., Code § 2-458 (2022). It appears that Plaintiffs, instead, means to reference Section 2-459, which governs classification of "police department uniformed employees." *See id.* § 2-459.

years in that Pay Grade, or rank. *See* Knoxville, Tenn., Code § 2-459 (2022). So, the Code does not create a property interest in Plaintiffs' preferred method of implementing the Step Pay Plan. *See Lathfield Invs.*, 136 F.4th at 301 (noting that the "dimensions" of a property interest "are defined by existing rules or understandings" that "secure certain benefits").

As a back up, the First Amended Complaint states that "all involved" in the Step Pay Plan "understood" that "there would be 25 steps within each job classification corresponding to years of service" [*See* Doc. 13 ¶ 30 (citations omitted)]. But that is a "conclusory allegation[] or legal conclusion[]" that is not entitled to weight. *See Willman*, 972 F.3d at 823. And the First Amended Complaint does not allege facts, or identify facts by incorporation, that show a "legitimate entitlement" to implementation of the Step Pay Plan in Plaintiffs' preferred way. The closest the First Amended Complaint comes is incorporation of a contemporaneous press release [*See* Doc. 13 ¶ 30]. But that Press Release merely references "allowing uniformed employees to advance each year throughout their careers" [*See* Doc. 1-2]. It does not mention, let alone establish, an initial step assessment based on years of service in a particular Pay Grade or rank [*See id.*]. And the statements in the Press Release are consistent with what is actually codified in the Step Pay Plan—increases in an officer's Pay Step each year he or she serves within a Pay Grade following implementation of the Plan. *See* Knoxville, Tenn., Code § 2-459 (2022). So, even under the more liberal "contract implied from the circumstances" theory of establishing a property interest, there is no showing of a "mutually explicit understanding that supports the plaintiff's claim of entitlement." *See Crosby*, 863 F.3d at 552 (cleaned up). Without a protected property interest, Counts One and Two fail.

Moving to the Fourteenth Amendment "Equal Protection" claims (Counts Three and Four), the First Amended Complaint potentially implicates two distinct equal protection theories. Under

the first, Plaintiffs must show "that a state actor intentionally discriminated against" them "because of membership in a protected class." *See Henry v. Blank*, 167 F.4th 375, 380 (6th Cir. 2026) (cleaned up). Under the second, "plaintiffs may assert a claim under the Equal Protection Clause even if they do not claim membership in any class or group, where they allege that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) (cleaned up) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)); *see also Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020). These types of claims "are generally termed 'class-of-one' claims," but that is "something of a misnomer" because there can be more than one individual who is allegedly wronged. *See Aldridge*, 404 F. App'x at 42 (cleaned up).

In opposition to Defendant's Motion, Plaintiffs (who are represented by counsel) assert that they "do no seek to create a 'class of one' equal protection claim" [Doc. 27 at 16]. Instead, they "bring their claims as a class of older police officers" who have allegedly been improperly classified [*Id.*]. So, that leaves theory one. But age "is not a suspect classification." *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018) (citation omitted). And even if it were, there are not factually allegations in the First Amended Complaint that would allow the Court to infer that any unequal application of the law as to Plaintiffs is a result of intentional discrimination based on age. *See Henry*, 167 F.4th at 380. So, Plaintiffs' theory fails.

And even if Plaintiffs had not disclaimed and abandoned a "class-of-one" theory, it would fail. The Supreme Court has strongly suggested, if not outright concluded, that "the class-of-one theory of equal protection has no application in the public employment context." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 607 (2008). For good reason too; if "plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only

that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." *See id.* at 607-08. And even if this theory were not expressly precluded in this precise context, the First Amended Complaint must show that Defendant intentionally discriminated against Plaintiffs and "intentionally treated" them "differently from others similarly situated without any rational basis for the difference." *See Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 527 (6th Cir. 2023) (cleaned up). This, the First Amended Complaint does not do. So, Counts Three and Four also fail.

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)). Here, having dismissed Plaintiffs' federal claims, upon which the Court's original jurisdiction rests, the Court declines to exercise supplemental jurisdiction over the remaining state claims. *See id.*; *see also* 28 U.S.C. § 1367(c)(3). And the Court dismisses those claims without prejudice.

## III. Conclusion

For the reasons above, the Court (1) **GRANTS** the "Motion to Dismiss Plaintiffs' First Amended Complaint" [Doc. 14] **in part**, (2) **DISMISSES** the federal claims in the First Amended Complaint **with prejudice**, and (3) **DISMISSES** the state claims **without prejudice**. Because no claims remain in this action, an appropriate judgment will enter.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge